UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x
LOURDES M. BATAILLE,

                        Plaintiff,

    -against-

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                        Defendant.
------------------------------------------------------------x

**MEMORANDUM & ORDER**

11-CV-0353 (ENV)

VITALIANO, D.J.,

    Plaintiff Lourdes M. Bataille seeks review, pursuant to 41 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security[1] (the "Commissioner") denying her application for disability insurance benefits under the Social Security Act ("the Act"). The parties have filed cross-motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Bataille seeks reversal and remand, arguing that the Commissioner's decision was not based on substantial evidence and, that the decision rest on an administrative record that required further development. The Commissioner submits that substantial evidence does support the decision and that there was no legal error. For the reasons set forth below, the Court denies the Commissioner's motion, and grants Bataille's cross-motion to the extent that this case is remanded for further administrative proceedings.

## Background

*A.    Procedural History*

    Bataille applied, on March 5, 2008, for disability insurance benefits based on

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Colvin is substituted for Michael J. Astrue as the defendant in this action. The Clerk is directed to amend the caption to reflect this change.

1

degenerative joint disease, which she says, especially compromised her ability to bear weight. On October 2, 2008, she filed an application for Supplemental Security Income ("SSI") benefits.[2] (Tr. 150-63.) After the Commissioner denied both claims, Bataille requested an administrative hearing, which was held on April 20, 2010 before Administrative Law Judge ("ALJ") David Z. Nisnewitz. (Tr. 69-72, 75-80, 82-87.) ALJ Nisnewitz issued a decision on May 7, 2010, denying Bataille's claims and finding that, while she was not able to work in her prior jobs, there were other jobs in the national economy she could perform. (Tr. 10-18.) The ALJ's decision was based on Bataille's testimony, her medical records, and the testimony of a vocational expert and a medical expert, both of whom testified at the behest of the ALJ. (*Id.*) On December 22, 2010, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. (Tr. 1-3.) Less than a month later, on January 19, 2011, Bataille filed this timely §405(g) action. (Def. Br. at 2).

*B.    Plaintiff's Medical History*

Plaintiff saw vascular surgeon James Bartek, M.D., on November 14 and 28, 2006, in connection with the conditions that are the cause of her disability claim. (Tr. 342, 345.) He diagnosed bilateral leg pain, edema, and venous insufficiency in the right popliteal vein. (Tr. 346.) An enlarged perforator vein in the right ankle, and two in the left ankle, were also found by Dr. Bartek on clinical examination. (*Id.*) On October 1, 2007, another physician, Gary Wright, M.D., diagnosed Bataille with a sprained knee and recommended a follow up with an orthopedist. (Tr. 318.)

It was an order she followed immediately. From October 9, 2007, through June 2, 2008, plaintiff was treated orthopedically with Stephen P. Schroering, M.D., who saw Bataille five

---

[2] Bataille filed her claim while living in Florida. She moved to New York in between the initial denial of her claim and the hearing before the ALJ.

times. (Tr. 323-41.) Following his October 19, 2007 examinations, he diagnosed abnormalities in her right knee that included a tear of the meniscus. He also found degenerative arthritis in the left ankle joint, and obesity. (Tr. 332.) The orthopedist noted that Bataille would not be able to work on her feet for more than 6 ½ hours. (*Id.*) Dr. Schroering reevaluated plaintiff three more times— in November, April and June, respectively. (Tr. 323-41.) His diagnoses remained consistent with those made at the initial visit, except for his subsequent finding of a torn meniscus of the left knee and degenerative arthritis of the left ankle. (Tr. 323, 327, 329-30.) Dr. Schroering's advice to Bataille also remained consistent. He again suggested weight-loss and consideration of arthroscopic surgery on the left knee. (*Id.*) After the June 2008 examination, he opined that Bataille was unable to work at her current job. (*Id.*) To assist in his course of care, Dr. Schroering ordered that objective diagnostic testing be done. An October 16, 2007 MRI he had ordered taken confirmed meniscal tearing, among other positive findings. (Tr. 351-52.) A November 7, 2007, bone scan of Bataille's knees, ankles, and feet showed abnormalities in her left foot consistent with either significant degenerative disease or previous traumatic injury, as well as damage to both knees consistent with mild degenerative disease. (Tr. 355-56.)

During the relevant time period, Bataille saw yet another physician. Between October 31, 2007 and January 5, 2009, she was examined on five occasions by Susan Strickland, D.O., an internist. Strickland diagnosed hypertension, elevated cholesterol, thyroid disease, overactive bladder, asthma, and neuropathy. (Tr. 440-53.)

Though mystery guests as far as the administrative decision is concerned, there were a slew more doctors and visits. Through 2008 and the spring of 2009, Bataille met with a series of physicians who saw her only once each. On October 24, 2008, Martha Pollock, M.D., examined plaintiff and diagnosed extensive degenerative joint disease affecting the knees and shoulders.

She also noted the presence of asthma. (Tr. 373.) On November 18, 2008, Dr. James McMullen diagnosed chronic shoulder and neck pain, right shoulder separation, and hypertension. (Tr. 414.) An x-ray study of the right shoulder, ordered by Dr. McMullen that same day, showed mild degenerative osteoarthritis with no acute bony abnormality. (Tr. 409.) On March 31, 2009, Pascal Bordy, M.D., performed a consultative examination and diagnosed chronic right shoulder sprain/strain with possible rotator cuff and degenerative joint disease, disc herniations, obesity, and asthma. Tr. 422.

On September 11, 2009, November 10, 2009, and March 9, 2010 Bataille saw Baburao Doddapaneni, M.D. who found diffuse muscle tenderness with a limited range of motion in her spine, arthralgia in her peripheral joints, and possible fibromyalgia based on the history given by plaintiff. (Tr. 485.) Russell Miller, M.D., yet another orthopedic surgeon, examined plaintiff on January 11 and 20, 2010. Dr. Miller diagnosed her with various medical conditions related to the right shoulder and knee. (Tr. 480.) A January 11, 2010 MRI taken at the request of Dr. Miller showed degenerative disc disease with multilevel bony ridging and bulge with facet arthropathy. (Tr. 482.) In March of that year, the test result of a needle EMG was consistent with prior clinical diagnoses, showing plaintiff suffered from bilateral low lumbar radiculopathy with chronic changes. (Tr. 490-94.)

The there was Dr. Herbert Ausubel. Plaintiff first saw Dr. Ausubel on December 1, 2009. He noted that Bataille possibly suffered from fibromyalgia. (Tr. 473.) On April 6, 2010, Dr. Ausubel completed a medical source statement diagnosing plaintiff with osteoporosis and osteoarthritis. (Tr. 477.) In a residual functional capacity[3] ("RFC") assessment, Dr. Ausubel

---

[3] A RFC is "what an individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis...." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)

4

opined that Bataille could sit cumulatively for one hour in an eight hour work day. (Tr. 475.) She could lift, he found, up to five pounds occasionally and could not stoop. (Tr. 476-77.)

## Standard of Review

Pursuant to 42 U.S.C. § 405(g), a Commissioner's decision will only be reversed if there is a reasonable basis to doubt the ALJ's application of legal principles or if the decision was not supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (*quoting Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d. 842 (1971)). The court should not weigh the conflicting evidence in the record and may not substitute its own judgment for that of the Commissioner. *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991).

After reviewing the Commissioner's final determination, the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a hearing." *Butts v. Barnhart*, 388 F.3d 377, 384 (*quoting* 42 U.S.C. § 405 (g).) "Remand for further development of the evidence is appropriate where there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Kirkland v. Astrue*, No. 06-CV-4861 (ARR), 2008 WL 267429, at 8 (E.D.N.Y. Jan. 29, 2008) (citing cases).

## Discussion

SSA has promulgated a five-step sequential analysis that an ALJ must use to determine whether a claimant qualifies as disabled. *See, e.g., Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.

---

(*quoting* SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996)).

1999); *accord Carvey v. Astrue*, 380 F. App'x 50 (2d Cir. 2010). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, if the claimant is not engaged in substantial gainful activity, the ALJ must determine whether the claimant has a "severe" impairment that limits her work-related activities. 20 C.F.R. § 404.1520(a)(4)(ii). Third, if such an impairment exists, the ALJ evaluates whether the impairment meets or equals the criteria of an impairment identified in the Commissioner's appendix of listed impairments. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, if the impairment does not meet or equal a listed impairment, the ALJ must resolve whether the claimant has the RFC to perform her past relevant work.[4] 20 C.F.R. § 404.1520(a)(4)(iv). This step requires that the ALJ first make an assessment of the claimant's RFC generally. 20 C.F.R. § 404.1520(e); *Id.* § 404.1545. Fifth, if the claimant cannot perform her past work, the ALJ determines whether there is other work that the claimant could perform. 20 C.F.R. § 404.1520(a)(4)(v). In making such a determination, the ALJ must consider four factors: "'(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (*quoting Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983)). The claimant bears the burden of proof as to the first four steps. *See, e.g., Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998); *accord Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). If the claimant proves that his impairment prevents him from performing past relevant work, the burden shifts to the Commissioner at the final step. *Id.* In the fifth step analysis, the Commissioner must show that

---

[4] Under the regulations, "past relevant work" is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1).

other work exists in significant numbers in the national economy given the claimants RFC and past work history. 20 C.F.R. § 404.1560(c)(2).

After completing the fifth step, the ALJ concluded Bataille was not disabled but retained the RFC to perform light work. "Light work" is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). It also requires a good deal of walking or standing. *Id.* In reaching this determination, the administrative decision notes an examination of Bataille's testimony and the opinions of her treating physicians. That there is this appeal telegraphs that the ALJ did not find them credible. Specifically the, ALJ found plaintiff's testimony to be exaggerated and the medical opinions to be inconsistent and inconclusive; he relied instead on the testimony of Dr. Louis J. Lombardi, a non-examining medical source testifying at SSA's call.

The administrative decision and the findings of the ALJ cannot survive conflict with the "treating physician rule." SSA's rules, regulations and protocols provide clear guidelines governing the consideration of opinions offered by a claimant's treating physician, that is, the evidentiary weight of such opinions, in determining disability eligibility. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). Specifically, controlling weight must be afforded to the opinions of the claimant's treating physician when they are supported by objective medical findings and are not contradicted by other substantial evidence. 20 C.F.R. § 404.1527(c)(2). Further, and critically, if the ALJ does not accord a treating physician's opinion controlling weight, the ALJ must clearly explain how much weight each opinion is to be given. *Brown v. Comm'r of Soc. Sec.*, 06-CV-3174 ENV MDG, 2011 WL 1004696, at *4 (E.D.N.Y. Mar. 18, 2011). Weight assessment is not supposed to be a mystical process. There are five factors to be considered by ALJs in making such determinations: the frequency of examination and the

7

length, nature, and extent of the treatment, the evidence in support of the treating physician's opinion, the consistency of the opinion with the record as a whole, whether the opinion is from a specialist, and other factors brought to the SSA's attention that tend to support or contradict the opinion. *See* 20 CFR § 404.1527(c); *Hach v. Astrue*, 07-CV-2517 (ENV), 2010 WL 1169926, at **2-3 (E.D.N.Y. Mar. 23, 2010). Short and simple, an ALJ must always give good, clear reasons in his decision for the weight given to the claimant's treating physician's opinion. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *accord Burgin v. Astrue*, 348 F. App'x 646, 648 (2d Cir. 2009).

That did not happen this case. In sharp contrast to the operative directives, the ALJ expended much effort to recount Bataille's relevant medical history but offered little insight into how he arrived at the assessment of the weight to be afforded her doctors' opinions. Indeed, never once does the administrative decision even recite who the treating physicians were. (Tr. 7-18.) Notwithstanding the decision's scant attention, implying they had little substance, Bataille's treating physicians supplied consistent findings and voluminous medical data including the results of objective medical testing. The administrative decision, to the contrary, places controlling reliance on the testimony and opinion of the non-examining Dr. Lombardi, a nontreating medical expert, whose testimony alone is identified as the evidentiary basis for discounting the treating physicians' reports and opinions. There is no account of what facts the ALJ considered in determining that controlling weight should not be given to the opinions of plaintiff's physicians. But, even if such a determination were correct, the law does not admit to silence as to why the determination is correct. *See Snell*, 177 F.3d at 133(holding that a reason must be given when the Commissioner does not credit the findings of a treating physician); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)(finding failure to provide "good reasons" for

8

not crediting the opinion of a claimant's treating physician is a ground for remand); *accord Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 77 (2d Cir. 2012). The ALJ's failure to comply with that requirement here is plain error.

Nor is there redemption based on, as the decision references, perceived inconsistencies or incompletions in the clinical records and supporting opinions of plaintiff's treating doctors. An ALJ has an affirmative duty to fully develop the record and request that treating physicians provide additional responses to perfect that development. *See Newsome v. Astrue*, 817 F. Supp. 2d 111, 139 (E.D.N.Y. 2011); *Dickson v. Astrue*, 1:06-CV-0511 (NAM/GHL), 2008 WL 4287389, at *13 (N.D.N.Y. Sept. 17, 2008). "If 'the adjudicator cannot ascertain the basis of the [treating physician's] opinion from the case record, the adjudicator must make every reasonable effort to recontact the source for clarification of the reasons for the opinion.'" *Maline v. Astrue*, 08-CV-1712 (NGG), 2010 WL 4258259, at *4 (E.D.N.Y. Oct. 21, 2010).

The administrative decision demonstrates that the ALJ was disturbed by such gaps and inconsistencies in the record here. At least three times in his decision, the ALJ discredited medical reports because he deemed them incomplete. For instance, the administrative decision observes that Dr. Doddapaneni indicated a weak right ankle, dorsal and plantar flexion but did not indicate how weak, nor was a muscle rating, *e.g.*, 3/5, 4/5 or /5, provided. Tr. 16. Yet, in identifying the deficiency in the record, a duty was simultaneously triggered to fill the identified gap in the record by proactively requesting from Dr. Doddapaneni any information or assessment found to be missing. The record is silent as to whether such an attempt was made and what the response was, if there was a response. Similarly, the decision discounts an EMG report because it was not accompanied by a physical examination. Then again with respect to Dr. Ausubel's RFC assessment, it is not considered citing lack of support in physical examinations, but not affording

9

an opportunity to explain what the ALJ apparently believed was an inconsistency. Succinctly, the ALJ effectively road-mapped in his decision certain gaps in the administrative record. Those gaps were not filled nor is there any suggestion that the ALJ even tried to fill them. The ALJ had, however, an affirmative duty to request further reports from the claimants treating sources and to fully develop the record. *See Maline*, 2010 WL 4258259, at *4. The failure to do so in the context of denying an application for benefits was legal error and a separate ground for remand. *See Schaal*, 134 F.3d at 505; *Brown*, 2011 WL 1004696, at **5-6.

## Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is denied and Bataille's cross-motion is granted to the extent that the final order of the Commissioner is vacated, the decision of the ALJ is reversed and the case is remanded for further administrative proceedings consistent with this Memorandum and Order.

The clerk of Court is directed to enter judgment and to close this case.

**SO ORDERED.**

Dated: Brooklyn, New York
July 16, 2013

s/ ENV

_____
ERIC N. VITALIANO
**United States District Judge**